Jason NORRIS, a minor by next friends, Carolyn Norris and Gerald Norris, and Carolyn Norris and Gerald Norris, Plaintiffs,

v.

The BOARD OF EDUCATION OF GREENWOOD COMMUNITY SCHOOL CORPORATION, et al., Defendants.

No. IP 90–1340–C.

United States District Court, S.D. Indiana, Indianapolis Division.

May 1, 1992.

Michael S. Reed, Indianapolis, Ind., for plaintiffs.

Donald S. Smith, Riley Bennett & Egloff, Indianapolis, Ind., for defendants.

MEMORANDUM ENTRY DISCUSSING ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ENTERING JUDGMENT IN FAVOR OF DEFENDANTS ON COUNTS I THROUGH V, AND DISMISSING COUNTS VI THROUGH XIV

TINDER, District Judge.

Plaintiffs' Amended Complaint contains fourteen Counts stating claims for mone-

tary damages for alleged wrongdoing by various combinations of the named Defendants. Defendants' Motion for Summary Judgment challenged the viability of each count. For the reasons discussed below, this Court will enter judgment in favor of Defendants on Counts I, II, III, IV and V. Counts VI, VII, VIII, IX, X, XI, XIII and XIV fail to state claims upon which relief can be granted and must be dismissed. Count XII must be dismissed because it states a claim over which this Court lacks subject matter jurisdiction. Defendants Clark Pleasant School Corporation's Motion for Summary Judgment will be denied as moot.

## BACKGROUND

Plaintiffs' Amended Complaint names the following persons and entities as Defendants: Greenwood Community School Corporation ("GCSC"), Johnson County Special Services Cooperative ("JCSSC"), Dr. Donald Strobel ("Strobel") (Superintendent of GCSC), Dr. Roger Brenton ("Brenton") (Asst. Superintendent of GCSC), Elbert Martin ("Martin") (Director of JCSSC), Sue Rice ("Rice") (Asst. Dir. of JCSSC), Roger Kinsey ("Kinsey") (Principal of Southwest Elementary School), Theresa Mandery ("Mandery") (teacher at Southwest Elementary School), Paul Velez ("Velez") (Principal of Greenwood Middle School), Mary Boand ("Boand") (teacher at Greenwood Middle School), Donna Anders ("Anders") (teacher at Greenwood Middle School), Linda Begley ("Begley") (Guidance Chairperson at Greenwood Middle School), Kenneth Nierman ("Nierman") (Asst. Principal of Greenwood Middle School), Judy Shockley ("Shockley") (Asst. Dir. of Johnson County Special Education), Angela Hornsby ("Hornsby") (teacher's aide for Southwest Elementary School), Stephanie Westcott ("Westcott") (School Psychologist for Special Services for Johnson County), Mattie Alger ("Alger") (aide for Southwest Elementary School), Clark Pleasant School Corporation ("CPSC"), Franklin Community School Corporation ("FCSC"), Edinburg

School Corporation ("ESC"), Ninehav Hinsley Jackson School Corporation ("NHJSC") and Center Grove Community School Corporation ("CGCSC").

Plaintiff Jason Norris ("Jason") is an emotionally handicapped minor; Carolyn and Gerald Norris (collectively "Norris'") are Jason's legal guardians. Jason attended classes at some of the Defendant school corporations and had direct or indirect contact with the natural persons named as Defendants. The Facts section of the Amended Complaint alleges that Defendants moved Jason between different programs and schools in a failed attempt to satisfy the requirements of the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C.A. §§ 1401 *et seq.* (West 1988 & Supp.1992).[1] Jason was diagnosed as having Attention Deficit Hyperactivity Disorder. Believing that the schools were not adequately or lawfully taking care of Jason's educational needs, the Norris' filed a request with the Indiana Department of Education, Division of Special Education; the request sought review of Jason's individual education plan ("IEP") and requested that a Hearing Officer review Jason's recent suspensions.

The type of hearing requested by the Norris' is called an Indiana Rule S-1 Hearing ("S-1 Hearing"), because it is provided by Rule S-1, which is located at 511 Ind.Admin.Code tit. 7-1, *et seq.* Plaintiffs allege that Defendants filed an Indiana Rule S-5 Application ("Rule S-5") in retaliation for Plaintiffs' request for the S-1 Hearing. Rule S-5 provides the procedures by which a minor is removed from his or her home and placed in a residential or institutional psychiatric facility. 511 Ind.Admin.Code tit. 7-5, *et seq.* Without Plaintiffs' knowledge or consent, four persons convened a Local Coordinating Committee ("LCC") to proceed with the Rule S-5 application; the LCC voted to submit a Rule S-5 application to the Indiana Department of Education.

---

**1.** This Act was called the "Education of the Handicapped Act" prior to its amendment in 1990. *See* Pub.L. 101–476, § 901(a)(1).

The Rule S–1 hearing was held before a Hearing Officer, who determined that Jason was not a candidate for a residential or institutional placement. The Hearing Officer issued findings and a decision, which required the schools to change Jason's IEP to conform to the IDEA. Plaintiffs allege that Defendants made a "systematic effort to circumvent" that order. At the beginning of the 1989–90 academic year, Plaintiffs placed Jason in a hospital and then enrolled him in Indiana Public School # 31 two days later.

Plaintiffs' allegations and claims arise from the battle waged between the parties regarding Jason's education. Plaintiffs allege that Defendants failed to provide Jason Norris with the type of education required by State and federal law and by specific orders of the Hearing Officer. Plaintiffs also claim that Defendants improperly attempted to remove Jason from his guardians and attempted to force Jason from the school system. These acts were allegedly done in retaliation for Plaintiffs' lawful attempts to force Defendants to provide a proper education. Finally, Plaintiffs allege that Defendants violated State and federal law by communicating confidential information to other administrators and other students.

In resolving Defendants' Motion, the Court has examined the evidence submitted by the parties, which includes affidavits by John C. Ehrmann, Carolyn Norris, Gerald Norris, Betty Firth, Sue Rice and Paul Velez.

## DISCUSSION

Defendants' challenges to Plaintiffs' Amended Complaint may be broken down into discrete sections. The subsections below discuss and determine the legal status of each claim stated in the Amended Complaint.

## COUNT I—STATE LAW TORT OF MALICIOUS PROSECUTION

■ Count I alleges that GCSC, JCSSC, Strobel, Brenton, Martin, Rice, Hornsby, Kinsey, Mandery, ESC, NHJSC, CPSC, FCSC and CGCSC are liable for committing the Indiana common law intentional tort of malicious prosecution. Plaintiffs allege that Defendants are liable under this tort theory because Defendants unlawfully initiated a Rule S–5 proceeding to remove Jason from the home of his grandparents in bad faith retaliation for Plaintiffs' request for a Rule S–1 hearing. (Pls.' Am. Compl., Count I ¶¶ 2, 5.)[2]

■ A claim of malicious prosecution requires proof of four elements: (1) that the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) defendant acted with malice in doing so; (3) prosecution was instituted without probable cause; and (4) the prosecution terminated in plaintiff's favor. *Strutz v. McNagny*, 558 N.E.2d 1103, 1106 (Ind.Ct.App.1990) (trans. denied); *Lazarus Dept. Store v. Sutherlin*, 544 N.E.2d 513, 519 (Ind.Ct.App.1989); *F.W. Woolworth Co. v. Anderson*, 471 N.E.2d 1249 (Ind.Ct. App.1984) (trans. denied). Defendants argued that even if Plaintiffs have stated a proper claim for this tort, the Defendants enjoy statutory immunity from liability for this kind of tortious conduct. As state governmental entities and state governmental employees, the Defendants are covered by sovereign immunity except for liability allowed expressly by statute. Indiana allows liability for some kinds of torts, but has expressly excluded liability for the tort of malicious prosecution. Ind. Code Ann. § 34–4–16.5–3(5) (Burns Supp. 1991) ("Tort Claims Act"). The Torts Claims Act provides that:

A governmental entity or an employee acting within the scope of his [or her] employment is not liable if a loss results from:

. . . .

**2.** In support of their malicious prosecution claim, Plaintiffs also alleged that Defendants submitted confidential information to the LCC without Plaintiffs' consent. (*Id.* ¶ 4.) Unveiling the "kitchen sink" style of pleading manifest in the remainder of the Amended Complaint, Plaintiffs add just about any allegation of conduct that disturbed them, whether or not it is connected to the legal theory at issue.

(5) The initiation of a judicial or administrative proceeding;

*Id.* This statute applies plainly to make the school corporation Defendants immune from liability for initiating a Rule S–5 administrative proceeding.

■ Plaintiffs argued that the Defendants ought not to enjoy immunity because Defendants brought the S–5 proceeding in bad faith. Bad faith, in the form of malice, is the very element of the malicious prosecution tort that makes the conduct wrongful. *Board of Comm'rs of Hendricks County v. King,* 481 N.E.2d 1327, 1331 (Ind.Ct.App.1985). Because the primary tort arising from initiating legal proceedings necessarily includes the element of bad faith, the presence of bad faith cannot remove the conduct from the very protection the Tort Claims Act envisioned. *Jacobs v. City of Columbus,* 454 N.E.2d 1253, 1261 (Ind.Ct.App.1983). The tortious conduct alleged in Count I is within the scope of immunity provided by Ind.Code Ann. § 34–4–16.5–3(5).

■ Vainly attempting to get around the Tort Claims Act, Plaintiffs argued that the natural person Defendants' acts were outside scope of their employment because the S–5 proceeding was not lawful and because they initiated the proceeding in bad faith.[3] This argument is incorrect; the employees' acts were well within the scope of their employment. The acts constituting the alleged malicious prosecution were referring Jason's case to the LCC and initiating the subsequent S–5 proceeding. The statute creating and governing LCCs makes plain that a school corporation has the privilege and duty of referring cases to the LCC. Ind.Code Ann. §§ 31–6–14–3(2) to 31–6–14–6 (Burns 1987). Thus, Indiana statutes provide specifically that school corporations, through their employees, may initiate LCC proceedings.

■ Plaintiffs seem to believe that because they have alleged that Defendants initiated the S–5 proceeding for retaliatory purposes, that the Defendants were acting outside the scope of their employment. This argument misconstrues the common law definition of "scope of employment." The scope of employment doctrine refers to a relationship between an employer and employee; that is, the employee's conduct is placed against the "template" created by the specific employer-employee relationship to determine whether the conduct was actuated by a purpose to serve the employer. *Sharp v. Egler,* 658 F.2d 480 (7th Cir.1981). Simply, an employee acts within the scope of employment if the employee acts with the intention of serving the employer's interests. *Gomez v. Adams,* 462 N.E.2d 212 (Ind.Ct.App.1984). Even if the ultimate purpose of the Defendants acts was not entirely savory, the Defendant employees initiated the LCC proceedings directly to further the interests of their employers.

School corporations, charged with a statutory responsibility regarding S–5 proceedings, must reasonably expect that their employees will initiate such proceedings; thus, although a school corporation would not necessarily approve of every S–5 proceeding, the employees' actions initiating them is within the "scope" of their employment. *See Carrell v. City of Portage,* 609 F.Supp. 314, 317 (N.D.Ind.1985) (citing *Foster v. Pearcy,* 270 Ind. 533, 387 N.E.2d 446, 449 (1979), *cert. denied,* 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980)). The scope of employment tests, which usually encompass a very wide range of employee activity, are not to be altered in this instance merely because Plaintiffs are making the unusual claim that the employers

---

**3.** Note that the school corporation Defendants cannot be liable for this tort regardless whether the employees were acting within the scope of their employment. If the employees were acting within the scope of their employment—a situation to which the principle of respondeat superior applies—then the Tort Claims Act provides immunity for the school corporation Defendants. If the employees' actions were outside the scope of their employment, then the bridge of liability created by respondeat superior would be absent and the school corporations could not be liable for the employees' acts. *Shelby v. Truck & Bus Group Div. of GMC,* 533 N.E.2d 1296, 1298 (Ind.Ct.App.1989); *Gomez v. Adams,* 462 N.E.2d 212, 222–23 (Ind.Ct.App. 1984). In either of the two possible situations, the school corporation Defendants would not be liable for this type of tortious conduct.

are *not* responsible for the employees' tortious conduct. The conduct of all Defendants falls within the scope of the Tort Claims Act language providing immunity for malicious prosecution.

Defendants are entitled to judgment in their favor on Count I of Plaintiffs' Amended Complaint because the Indiana Tort Claims Act precludes liability for the claim of malicious prosecution.

## COUNT II—ABUSE OF PROCESS

■■■■ Count II claims that GCSC, JCSSC, Strobel, Brenton, Martin, Rice, Hornsby, Kinsey and Mandery are liable for the Indiana common law intentional tort of abuse of process. This tort requires a finding that a defendant misused the judicial process for an end other than that for which it was designed. *Voors v. National Women's Health Org.*, 611 F.Supp. 203 (D.C.Ind.1985); *Archem, Inc. v. Simo*, 549 N.E.2d 1054 (Ind.Ct.App.1990) (trans. denied). Abuse of process does not require a finding that a criminal proceeding terminated in favor of the plaintiff; instead, it requires a finding that the defendant used the power of the court other than for the purposes for which it is available. *Dorrell v. State*, 83 Ind. 357 (1882); *Central Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090 (Ind.Ct.App.1986). A plaintiff must show that the ulterior motive and use of judicial process would not be proper in normal prosecution of a case. *Shoup*, 501 N.E.2d 1090.

Plaintiffs claimed that "certain proceedings were instituted and pursued by [Defendants] ... wherein said defendants sought to remove said plaintiff, Jason Norris[,] from the home of plaintiffs Gerald and Carolyn Norris for purposes of placement in a residential or institutional psychiatric facility...." (Pls.' Am.Compl. Count II ¶ 2.) Plaintiffs claimed that Defendants instituted this "John Doe" S-5 proceeding with the LCC without consent or notice, without the required current educational, medical, psychological testing and in bad

faith for the "collateral purpose" of retaliation. (*Id.* ¶¶ 3–5.)

As with the mirror claim for malicious prosecution stated in Count I, this claim is subject to a summary judgment on the determinative basis of Defendants' Tort Claims Act affirmative defense. Although it appears that Plaintiffs have alleged a proper claim for abuse of process, the immunity from liability provided by Ind.Code § 34-4-16.5-3(5) applies to this claim also.[4] The inescapable thrust of this claim is that Defendants *initiated* an S-5 proceeding for a wrongful purpose; the other factual allegations are immaterial. The Tort Claims Act immunity applies with equal force of logic to claims for malicious prosecution and abuse of process. Defendants are entitled to judgment in their favor on Count II of Plaintiffs' Amended Complaint because the Indiana Tort Claims Act precludes liability for the claim alleged.

## COUNT III—ABUSE OF PROCESS; CRIMINAL PROCEEDINGS

■■■ Plaintiffs claim that Defendants GCSC, JCSSC, Strobel, Brenton, Martin, Rice, Shockley, Velez, Board, Anders and Begley committed the tort of abuse of process by maliciously seeking to institute criminal assault proceedings against Jason. Jason allegedly physically assaulted his instructors and fellow students on more than one occasion; Defendants attempted to raise criminal charges, but the prosecutor's office exercised its discretion not to pursue the charges. The act of bringing a charge before a prosecutor plainly falls within the immunity provided by the Tort Claims Act. *King*, 481 N.E.2d at 1330. Defendants are entitled to judgment in their favor on Count III of Plaintiffs' Amended Complaint because the Indiana Tort Claims Act precludes liability for the claim alleged.

## COUNT IV—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

This Count claims that Defendants GCSC, JCSSC, Strobel, Brenton, Kinsey,

---

**4.** No published decision regarding the Indiana Tort Claims Act has addressed directly whether abuse of process liability falls within the Act's umbrella of immunity.

Mandery, Hornsby, Alger, Westcott, Martin, Rice, Shockley, Velez, Board, Anders and Begley committed the Indiana common law tort of intentional infliction of emotional distress against the Plaintiffs. Plaintiffs allege that Defendants engaged in a long-term pattern and course of conduct with the intent of inflicting emotional distress; this alleged pattern includes the following acts:

1. Conspired to obtain confidential documents
2. Denied Jason educational services
3. Sought to obtain medical information without consent
4. Convened LCC for "John Doe" Rule S–5 proceeding
5. Submitted a Rule S–5 application containing stale and out of date information
6. Exerted undue influence on Jason to turn him against his grandparents
7. Circumvented Hearing Officer's Order
8. Discriminated against Jason by improper use of isolation and time out
9. Failed to follow behavior modification plan
10. Sought to have criminal charges filed against Jason for assaulting classmates

(Am.Compl., Count IV ¶¶ 4(a)–4(1) (paraphrased).)

■ Defendants incorrectly asserted the absolute position that Indiana law does not provide a cause of action for intentional infliction not connected with a physical impact. (Defs.' Reply Br. at 6–7.) Indiana law recognizes that the tort includes intentionally tortious conduct invading a legal right by its very nature likely to produce an emotional reaction. *Cullison v. Medley,* 570 N.E.2d 27 (Ind.1991) (adopting rule of Restatement (Second) of Torts § 46 (1965)); *Charlie Stuart Oldsmobile, Inc. v. Smith,* 357 N.E.2d 247, 254 (Ind.Ct.App.1976).

■ To support this kind of claim, a plaintiff must prove that "(1) there is a tort which invades a legal right of the plaintiff; (2) which is likely to provoke an emotional disturbance or trauma; and (3) the defen-

dant's conduct is willful, callous, or malicious." *Moffett v. Gene B. Glick Co., Inc.,* 621 F.Supp. 244, 285 (N.D.Ind.1985); *see also Olsson v. A.O. Smith Harvestore Prod., Inc.,* 656 F.Supp. 644, 647 (S.D.Ind. 1987); *Charlie Stuart Oldsmobile,* 357 N.E.2d at 254. Plainly, intentional infliction of emotional distress requires a "host" intentional tort; that is, the defendant must commit a recognized intentional tort against a plaintiff in such a manner that the offense would likely cause emotional distress. *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1056 (Ind.Ct.App. 1990).

Plaintiffs allegations of intentional wrongdoing fall into two categories, each requiring separate analysis. The first category of alleged wrongdoing involves Defendants' acts constituting malicious prosecution and abuse of process—acts relating to initiating S–5 and criminal proceedings. The second category of alleged wrongful conduct contains all other acts not connected with initiating those proceedings.

■ Although the tort of malicious prosecution provides the kind of invasion that could support an intentional infliction of emotional distress claim, *Lazarus Dept. Store,* 544 N.E.2d at 516, such a claim is barred by the Tort Claims Act. Ind.Code Ann. § 34–4–16.5–3(5). Immunity provided by Tort Claims Act does not apply to specific torts but rather applies to specific conduct—and logically to any liability that may arise from that conduct. Therefore, the conduct associated with initiating the Rule S–5 or criminal proceedings cannot form the basis for a viable intentional infliction of emotional distress claim. Defendants are immune from all tort liability arising from those kinds of acts. Therefore, this kind of alleged tortious conduct cannot make the Defendants liable under a theory of intentional infliction of emotional distress.

■ For different reasons, the second category of conduct also fails to support Plaintiffs' claim. Plaintiffs fail to allege other conduct that constitutes an intentional tort recognized in the State of Indiana;

even if Plaintiffs have alleged facts sufficient to constitute some kind of tortious conduct, the conduct alleged does not constitute "an invasion of a right which by its very nature is likely to provide an emotional disturbance." Although many of Plaintiffs' allegations involve purported violations of statutory procedures or other unsavory conduct, these allegations fail to state recognized intentional torts. For example, allegations that Defendants circumvented the Hearing Officer's Order, held private conversations with Jason to turn him against his guardians, discriminated regarding discipline and solicited other parents for letters do not support any intentional tort claim. It is axiomatic that if there is no underlying intentional tort, then there can be no claim for intentional infliction of emotional distress. *Rogers,* 557 N.E.2d at 1056.

In sum, although Indiana law recognizes a claim for intentional infliction of emotional distress, the facts alleged by Plaintiffs either do not support such a claim or support a claim barred by the Tort Claims Act. Defendants are entitled to judgment in their favor on Count IV of Plaintiffs' Amended Complaint.

### COUNT V—DEFAMATION

Count V claims that Defendants Strobel, Brenton, Martin, Rice, Shockley, Velez, Boand, Anders, Mandery, Hornsby and Kinsey committed the Indiana common law intentional tort of defamation. Plaintiffs alleged that Defendants "communicated confidential information regarding [Jason] and his educational program and behavior to non-school personnel" and that these communications defamed Jason and damaged his reputation in the community. Apparently, this breach of confidentiality includes the allegation that Defendants informed teachers and students at Southwest Elementary that Jason had been hospitalized in a psychiatric unit. (Pls.' Am.Compl. ¶ 50.) Plaintiffs claim further that Defendants' alleged communications violated federal law. Plaintiffs have failed to state a claim under federal law and have failed to provide the necessary factual support for a claim under Indiana common law.

A disclosure of confidential information does not create a private cause of action for damages under federal law. Plaintiffs claim incorrectly that 20 U.S.C. § 1232g and 34 C.F.R. §§ 99.1 *et seq.* provide the legal basis for their claim. That statute does not provide a private cause of action. *Girardier v. Webster College,* 563 F.2d 1267, 77 (8th Cir.1977); *Daniel B. v. Wisconsin Dept. of Public Instruction,* 581 F.Supp. 585, 592 (E.D.Wis.1984), *aff'd,* 776 F.2d 1051 (7th Cir.1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986); *Price v. Young,* 580 F.Supp. 1, 2 (E.D.Ark.1983). Any claim Plaintiffs have attempted to state under federal law must be dismissed.

Plaintiffs' state law defamation claim meets an equally determinative fate. Plaintiffs' two-paragraph response argument, interrogatory answers and affidavits fail to create an issue of fact whether Defendants defamed any of the Plaintiffs. Plaintiffs' interrogatory answers regarding this claim are disturbingly vague (Pls.' Interrog. Answers 19, 20, 21); affidavits submitted by Plaintiffs Carolyn and Gerald Norris in response to the summary judgment state merely that "Jason's day to day affairs regarding school became common knowledge throughout the Greenwood community due to defendant's [sic] improper discussions with non-school personnel." (Carolyn Norris Aff. ¶ 19; Gerald Norris Aff. ¶ 19.) Plaintiffs do not seem to understand that a summary judgment challenge requires them to state "specific facts" supporting their claim; a re-hash of general allegations about purported defamatory information does not state such facts. Fed. R.Civ.P. 56(c).

A claim requires specific facts from witnesses/affiants qualified to state them based upon *personal knowledge,* not third-party supposition about what might have transpired. Fed.R.Civ.P. 56(e). Plaintiffs' other submission completely fails to support a claim of defamation. An affidavit from Ms. Betty Firth stated that

> I was informed by Mr. Velez that Jason Norris was being removed or had been

removed from the school and that he would not need the letter which had been requested.

. . . .

[Mr.] Velez made statements to me and my son concerning Jason that were both derogatory and untrue. I am also aware of other statements made by school personnel to myself and to my Terry concerning Jason that were untrue and derogatory, particularly a statement made by Terry's teacher to the effect that Jason "went crazy, probably on drugs and that he was in the hospital."

(Firth Aff. ¶¶ 5, 7.) The first sentence does not support the fact that Defendants made a defamatory statement; it merely recites a "true" fact. A person cannot be liable for defamation if the alleged statement is true. Ind.Code Ann. § 34–1–5–2 (Burns 1986); *Bone v. City of Lafayette, Ind.*, 919 F.2d 64 (7th Cir.1990); *Near East Side Comm. Org. v. Hair*, 555 N.E.2d 1324, 1330 (Ind.Ct.App.1990); *Elliot v. Roach*, 409 N.E.2d 661, 681 (Ind.Ct.App.1980). The second sentence provides an unspecific, unsupported conclusion—insufficient to support a claim. The third sentence is similarly conclusory and otherwise fails to state a fact based upon personal knowledge; a belief about a statement made to third party does not state a fact based on personal knowledge.

Thus, Plaintiffs have failed to produce specific facts supporting a statement whose falsity is further supported by other specific facts. When a summary judgment motion is opposed by allegations and not facts, the motion must succeed. Defendants are entitled to judgment in their favor on Count V of Plaintiffs' Amended Complaint.

### COUNT VI—EDUCATIONAL MALPRACTICE

■ Count VI claims that Defendants GCSC, JCSSC, Strobel, Brenton, Martin, Rice, Shockley, Velez, Kinsey, Mandery, Board, Anders, Alger, Westcott and Nierman committed the Indiana common law tort of educational malpractice. Plaintiffs allege the Defendants breached their legal

duty to provide Jason a "free appropriate public education" and thereby caused him harm, injury and deprived him of academic progress. Plaintiffs admit that no Indiana court has recognized the cause of action stated in this Count. (Pls.' Br.Resp. at 8.) In fact, no published Indiana appellate decision has even discussed the possibility of establishing this cause of action. This federal court must follow established Indiana law or predict what the Indiana Supreme Court would do were it to address an unsettled area. Creating a tort of this nature involves a policy decision this Court is not able to make. Count VI must be dismissed because it fails to state a claim upon which relief may be granted under Indiana law.

### COUNT VII—COMMUNICATION OF CONFIDENTIAL INFORMATION

Count VII claims Defendants GCSC, JCSSC, Strobel, Brenton, Martin, Rice, Shockley, Mandery, Hornsby, Anders, Board, Velez, Kinsey and Nierman violated Plaintiffs' "right to privacy and confidentiality by certain acts." Plaintiffs allege the following acts violated their rights in a manner providing a cause of action to recover money damages:

1. Defendants communicated certain confidential information about Jason's educational records, psychological records and medical records to individuals not employees, agents or representatives of the school corporations;
2. Defendant Rice used an out-dated consent form to receive confidential information from Dr. George McAfee, who treated Jason;
3. Defendants communicated confidential information to the LCC under a "John Doe" submission;
4. Defendants communicated the records and information to the Indiana State Department of Education; and,
5. Defendant Velez communicated confidential information to other parents.

(Pls.' Am.Compl. Count VII, ¶ 2(a)–(e) (paraphrased).)

■ Defendants' initial argument seeking to dismiss this Count overestimates the burden on a party stating a claim in a

pleading. Rule 8 of the Federal Rules of Civil Procedure makes plain that a party need only allege facts giving notice of the occurrence allegedly creating liability; a party need not state legal theories in its pleading. Fed.R.Civ.P. 8. Defendants' Interrogatory 30 does not provide a basis for Defendants' mistaken position that Plaintiffs limited their legal theories for relief to the answer provided to that interrogatory. The correct question is whether Count VII states a cause of action under *any* legal theory; if so, then the question is whether the colorable claim(s) is sufficiently supported to survive a summary judgment.

Plaintiffs have asserted two legal theories supporting their claim for damages because the Defendants "did violate the plaintiff's right to privacy and confidentiality." First, Plaintiffs claim Count VII states a § 1983 claim for damages; that is, a damage claim arising from a violation of federal law. Second, Plaintiffs claim that Defendants' conduct constitutes the Indiana common law intentional tort of invasion of privacy.

 Defendants argued that Count VII does not state a sufficient § 1983 claim because the Count does not say "this is a § 1983 claim." A complaint need not state specifically that a particular claim arises under "42 U.S.C. § 1983." These "magic words" are not required to state a valid § 1983 claim; the substance of the allegations provides notice that the claim arises under the federal Constitution. As the Supreme Court stated:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Thus, the question is whether the procedurally-proper § 1983 claim alleges a proper substantive claim actionable under that procedural law.

 Section 1983 does not define substantive injuries but rather provides a remedy for injuries defined by other federal laws. In essence, § 1983 was designed to open federal courts to private citizens to provide them a remedy from State actions that deprived the citizens of rights guaranteed by federal law. *Mitchum v. Foster,* 407 U.S. 225, 238–39, 92 S.Ct. 2151, 2159–60, 32 L.Ed.2d 705 (1972). The statute provides that

> Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1981). Plaintiffs properly allege that the Defendants' acts were intentional and were performed in bad faith. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). Thus, Count VII properly states a cause of action if the allegations could possibly support the claim that Defendants deprived Plaintiffs of a "right" provided by federal statutes or the federal Constitution.

Plaintiffs allege that Defendants violated Plaintiffs' "right to privacy and confidentiality." (Pls.' Am.Compl., Count VII ¶ 2.) This alleged federal "right" could have as its source federal statutes or the United States Constitution. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *see also Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Defendants attempted to ferret out Plaintiffs' legal theories with Defendants' Interrogatory Number 31. Plaintiffs replied that the federal statute providing the right of privacy and confidentiality of which Defendants deprived them was the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232g (West 1990) and connected federal regulations, 34 C.F.R. § 99.1 *et seq.* (1990). Plaintiffs

(mis)cited *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), as their legal "theory" that Defendants' alleged conduct violated a right guaranteed by the Constitution.

 The statutory basis alleged for Plaintiffs' claim is insufficient to support a § 1983 action for damages. The FERPA does not provide a private right of action. *Tarka v. Franklin*, 891 F.2d 102 (5th Cir. 1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 940 (1990); *Klein Indep. Sch. Dist. v. Mattox*, 830 F.2d 576, 579 (5th Cir.1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988); *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21 (2nd Cir.1986); *Girardier*, 563 F.2d 1267. The FERPA provides expressly that the Secretary of Education is responsible for enforcing the provisions and protections of FERPA; Section 1983 does not create a private right of action for damages where the federal statute provides an exclusive administrative enforcement mechanism. *Halderman*, 451 U.S. 1, 101 S.Ct. 1531; *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Klein Indep. Sch. Dist.*, 830 F.2d at 580; *Fay*, 802 F.2d at 33.

Note well the distinction between an interest in "confidentiality" and a privacy interest. As discussed by the Seventh Circuit in *Pesce v. J. Sterling Morton High Sch., Dist. 201*, 830 F.2d 789, 796–97 (7th Cir.1987), whether information is "confidential" or not is determined by statutory and common law. In contrast, whether capture or disclosure of information violates one's right to privacy is a matter of Constitutional law requiring a distinct analysis. *See also Whalen v. Roe*, 429 U.S. 589, 600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977).

The next question is whether Count VII alleges properly that Defendants deprived Plaintiffs of a right guaranteed by the United States Constitution. Does the Constitution itself guarantee a "right of privacy" in a student's educational records? If so, is a person "deprived" of such a right by the conduct in which Defendants allegedly engaged?

 Although the extent of the interest is not entirely clear, an individual has a constitutionally protected interest in avoiding disclosure of some personal matters. *Whalen*, 429 U.S. at 599, 97 S.Ct. at 876; *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir.1980); *see generally* 1 Sheldon H. Nahmod, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, § 3.18 at 225 (1991). This interest may extend to a student's interest in his records; if it does, then the interest must be balanced against the government's interest in disclosure to determine whether the student has been "deprived" of a right. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 313–17, 99 S.Ct. 1123, 1130–32, 59 L.Ed.2d 333 (1979); *Westinghouse*, 638 F.2d at 578–79. Some cases dealt directly with the issue whether information in certain records may be disclosed for certain purposes. *See e.g.*, *Westinghouse*, 638 F.2d at 578–79; *Detroit Edison*, 440 U.S. at 313, 99 S.Ct. at 1130. These cases make plain that the purpose and extent of disclosure are critical factors balanced against the individual's legitimate privacy expectation (if any). For example, even very personal information may be disclosed for a limited purpose if that purpose is of superior importance. *See Schail by Kross v. Tippecanoe County School Corp.*, 864 F.2d 1309, 1322 n. 19 (7th Cir.1988) (inter-departmental disclosure of confidential medical information permissible because of limited use).

 Count VII alleges that Defendants communicated confidential information from Jason's records to non-school corporation personnel. (Pls.' Am.Compl., Count VII ¶ 2(a), (c) & (d).) The Norris affidavits bear out that these disclosures were to the LCC regarding the S–5 hearing and to the Indiana Department of Education regarding the same. While the communications likely involved information over which Jason had a legitimate privacy interest, that interest was outweighed by the use of the information. Although the information was communicated to non-school personnel, it was within the State educational system as provided by State law. A student does not have a legitimate expectation that in-

formation potentially related to his educational needs will not be available within the educational system. Regardless whether the Defendants had a proper motive in bringing the S–5 proceeding, their communication of information from Jason's records was not so broad as to violate his right to privacy.

■ Count VII alleges further that Defendant Rice improperly used a release form to obtain psychological information from Jason's psychologist, Dr. George McAfee. Defendants denied this allegation. Neither party submitted evidence in support of or opposition to the factual sufficiency of this allegation. The constitutional right of privacy—as elusive and amorphous as it is—does not protect against the wrong alleged. As described in *Whalen,* the Constitution prohibits the *disclosure* of information over which one has a legitimate privacy interest. The methods used to obtain information are limited by the fourth amendment directly. Although obtaining psychological records allegedly under false pretenses could be prohibited by State or federal laws, that conduct does not deprive a person of a right guaranteed by the Constitution.

Plaintiffs contend that Defendant Velez "communicated confidential information regarding the education of Jason Norris to parents of other children in Jason Norris' class...." Affidavits from Defendant Velez and Betty Firth do not support a § 1983 claim that Defendants deprived Plaintiffs of their right to privacy. Ms. Firth states merely that Defendant Velez made statements that were "both derogatory and untrue"; her affidavit does not even support the minimally sufficient element that the information came from Jason's records. The Constitution does not prohibit disclosure of information learned during the ordinary course of instruction; if prohibited at all, it is a matter of state law (see below).

■ Defendants argue that Plaintiffs' State law claim demands a summary judgment because three of the four incidents occurred more than 180 days prior to the date Plaintiffs filed their tort claims notice, November 9, 1989. This is correct. The only alleged incident not subject to this affirmative defense is that Defendant Velez "communicated confidential information regarding the education of [Jason] to parents of other children in [Jason's] class...." As discussed in regard to Count IV, Ms. Firth's affidavit is the only viable source of facts supporting the allegation of invasion of privacy. Ms. Firth's affidavit states no specific facts supporting Plaintiffs' claims; in contrast, Defendants' submitted an affidavit from Mr. Velez stating that he discussed no confidential information with Ms. Firth. (Velez Aff. ¶ 5.) Because Plaintiffs failed to state specific facts supporting a reasonable finding that Defendants committed the alleged tort within the limitations period, Plaintiffs cannot recover under this theory.

Count VII will be dismissed.

## COUNTS VIII THROUGH XIV

These seven counts state essentially the same factual allegations. Each count states a different cause of action (each purportedly predicated on a distinct legal basis) arising from the facts alleged. In short, Plaintiffs allege three factual events in support of these claims: (1) Defendants convened the LCC without providing notice or opportunity for a hearing as required by the IDEA; (2) Defendants submitted confidential, out-of-date information to the LCC and others; and, (3) Defendants instituted a Rule S–5 proceeding to retaliate against Plaintiffs for requesting a Rule S–1 hearing.

These factual allegations state causes of action that may be placed into three different general categories. These categories are described as follows:

(1) Defendants' conduct violated the IDEA because Jason's educational plan was not in substantive compliance with IDEA;

(2) Defendants' conduct violated the United States Constitution because Defendants failed to follow procedures required by IDEA;

(3) Defendants' conduct towards Plaintiffs constituted an independent violation of

rights guaranteed by the United States Constitution.

██ Defendants' Motion for Summary Judgment argued that Counts VII through XIV, each of which states one or more of the types of claims listed above, should be dismissed on jurisdictional grounds. Defendants argue that Plaintiffs failed to exhaust their administrative remedies prior to filing this district court action seeking the relief requested in Counts VII through XIV. (Defs.' Br. Support Mot.Summ.J. at 20–25.) Defendants' overly-blunt argument attempts to roll over Plaintiffs' claims by ignoring half of the allegations and misconstruing others. Defendants seem to misunderstand that for a claim to be barred for failure to exhaust administrative remedies, the claim must actually state a cause of action seeking a remedy that could be obtained through the administrative process. If a count states a claim independent from any relief available under an administrative process, then it is irrelevant whether the plaintiff "exhausted" any administrative remedy. One cannot exhaust that which does not exist.

### Category One: Claim Directly Under the IDEA (Count XII)

██ Count XII of Plaintiffs' Amended Complaint states a claim that is not actionable unless and until a statutorily-provided review process has been completed. This claim is based on substantive and procedural rights created by federal statute, 20 U.S.C.A. §§ 1401 *et seq.* (West 1990 & Supp.1992). A federal district court's jurisdiction over such claims is derived solely from § 1415(e)(1) & (2). Those sections require a plaintiff to seek the administrative review described by § 1415(b)(2) & (c), if applicable, prior to seeking review in a federal district court. *Honig v. Doe,* 484 U.S. 305, 312, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988); *Doe v. Alabama State Dept. of Educ.,* 915 F.2d 651, 659 (11th Cir.1990); *Cox v. Jenkins,* 878 F.2d 414, 418 (D.C.Cir. 1989); *Christopher W. v. Portsmouth Sch. Comm.,* 877 F.2d 1089, 1093 (1st Cir.1989); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2nd Cir.1987); *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981). Thus, to bring a district court action seeking redress for an alleged violation of a substantive or procedural right created by the IDEA, the plaintiff must prove that the administrative review provided by § 1415(b)(2) & (c) is no longer available to provide relief.

The type of review required by § 1415(b)(2) & (c) is available in Indiana by way of a Rule S–1 hearing (511 Ind.Admin.Code tit. 7–1–3(g)) and/or an appeal to the Board of Special Education Appeals ("BSEA") (*Id.* at 7–1–3(h)). Defendants argued that Plaintiffs failed to satisfy § 1415(e)(2) because Plaintiffs failed to use either of these options to seek further review of Jason's situation. Plaintiffs responded that there was no logic in further "review" because a previous Rule S–1 hearing resulted in findings and a decision *favored* by Plaintiffs. Plaintiffs admit they were not "aggrieved" by the Hearing Officer's findings and decision; in fact, they desired to have that order enforced.

The administrative review process prescribed by § 1415(b)(2) & (c) applies when a party is "aggrieved" by a decision of a hearing officer. A party "aggrieved" by a presumably adverse decision must then "appeal" that decision to the BSEA. If a party is aggrieved by the hearing officer's findings and decision, then the party cannot bring a federal district court action until the party has appealed to the BSEA. However, if a student is not "aggrieved" by a hearing officer's "findings and decision," but merely desired to have the resulting order enforced, does the student meet the jurisdictional requirements of § 1415(e)(2)?

This question discloses that there is more to jurisdiction than merely "exhausting" administrative remedies. The parties in this matter repeat the phrase "failure to exhaust administrative remedies" apparently without looking at the law applicable to this case. That phrase captures only one facet of jurisdiction; this Court's jurisdiction over IDEA matters is controlled strictly by § 1415(e)—not by any single phrase. A hearing officer determines whether a student is receiving a "free appropriate

public education." Section 1415(e)(1) provides that a hearing officer's decision will be final, except that it may be appealed to the BSEA. The party bringing the appeal need not have been aggrieved by the hearing officer's findings and decision. Any other type of review or action requires that some party be "aggrieved" by the hearing officer's findings and decision. Regardless whether the party is "aggrieved" or merely bringing an "appeal," the party *must* next seek review from the BSEA. This level of review cannot be side-stepped. This Court has jurisdiction *only* if a party is "aggrieved" by a decision of the BSEA—any other situation requires further administrative review.

Plaintiffs incorrectly argue that they were in a "catch-22" situation because they were not "aggrieved" by any order but rather faced a school district unwilling to abide by a valid order. This is incorrect; an adequate remedy was plainly available. When a school district ignores a valid final order, the proper remedy is enforcement of that order. That remedy is available through the administrative process created by Indiana law, which allows private individuals to bring a complaint to the Division of Special Education that a public agency is taking action contrary to free appropriate public education. 511 Ind.Admin.Code tit. 7-1-7 (1988). The investigator's finding is binding on the public agency and may be appealed to the Commission on General Education; failure to comply with the finding may result in loss of State and federal funding. *Id.*

Plainly, a complaint that a school ignored a hearing officer's order may be remedied through the administrative process. Plaintiffs failed to seek this type of required remedy. If Plaintiffs did not receive a favorable response from the investigator, then they were required to appeal to the Commission on General Education. If Plaintiffs were "aggrieved" by the Commission's decision (for example, by a "finding" that the school district had properly implemented the order), then Plaintiffs would meet the requirement provided by § 1415(e)(2) and could bring a federal suit

to force the school to comply with the IDEA.

Seemingly accepting the obvious conclusion that further administrative review was available when they filed this action, Plaintiffs argue they were excused from exhausting those avenues of potential relief. Citing *Tirozzi*, 832 F.2d at 750, Plaintiffs argue that exhaustion of administrative remedies is not required where it would be "futile, inadequate or impractical." (Pls.' Br.Opp'n Summ. J. at 21–22.) Plaintiffs' arguments addressing this issue patently disclose that Plaintiffs simply refused to seek out their available curative remedies. Instead, Plaintiffs had seemingly resolved that Defendants were not going to comply and thus Plaintiffs desired to make the Defendants pay for that act. The IDEA does not provide a mechanism to punish a school district through a monetary penalty imposed by a federal district court. When the administrative review process is used properly, an offending school district will either comply or lose valuable State and federal funding.

 Plaintiffs failed to seek enforcement through an investigator and therefore cannot claim that exhausting the administrative review process would be "futile." *Cox v. Jenkins*, 878 F.2d 414 (D.C.Cir.1989) (noncompliance with order must be addressed through administrative process). A party seeking redress available under the IDEA bears the burden of showing why the party should be excused from exhausting all administrative review avenues available to achieve the desired remedy. *Id.* at 419. There is absolutely no evidence that further review—by an agency entirely distinct from the Defendants—would not provide an appropriate remedy.

 Plaintiffs argue also that the monetary damages sought by Count XII are available under the IDEA and that by requesting this type of relief they were not required to exhaust their administrative remedies. (Pls.' Br.Opp'n Summ. J. at 24.) Plaintiffs seem to contend that because the "relief" of damages is not available through the administrative process, that they may proceed directly to a district

court if that is the remedy they would prefer. This argument represents a profound misunderstanding of § 1415(e)(2) and *Anderson v. Thompson,* 658 F.2d 1205, 1213 (7th Cir.1981). The *Anderson* court held that § 1415(e)(2), which provides that a court "shall grant such relief as the court determines is appropriate," allows a district court to award limited damages when "appropriate." Such damages are not for general inconvenience and are not exemplary, but rather are limited to the cost of the alternative educational services purchased at the parents' expense. *Anderson,* 658 F.2d at 1214.

However, these damages are available only if the plaintiff meets the jurisdictional requirements of § 1415(e)(2). Before a district court may consider whether monetary damages are available, the plaintiff must have sought the review and relief available (compliance) through the administrative process. If that process fails, and the plaintiff can prove the elements set forth in *Anderson,* then—and only then—may a district court award these limited damages. Plainly, a plaintiff cannot avoid the jurisdictional requirements merely by requesting a form of relief available from the district court only.

In sum, any action claiming a violation of the IDEA or seeking to enforce a right created by the IDEA must be preceded by a complete exhaustion of the scheme of administrative review created by the Act. The IDEA required Plaintiffs to seek available, curative administrative remedies from the State of Indiana; Plaintiffs failed to do so without justifiable excuse and therefor failed to satisfy the jurisdictional requirements imposed plainly by the IDEA. Count XII must be dismissed for a lack of jurisdiction.

*Category Two: Constitutional Due Process Claim for Failure to Follow Procedures Required By the IDEA*

■ Plaintiffs claim that Defendants' failure to follow the hearing procedures required by the IDEA violates the Constitution and provides Plaintiffs with a cause of action for damages through the Civil Rights Act of 1871, 18 U.S.C. § 1983. This kind of claim demonstrates a fundamental misunderstanding of the nature of the Constitutional right to due process of law. That right is created and defined by the Fourteenth Amendment of the United States Constitution and is neither defined nor authoritatively interpreted by procedures established by federal statutes.

■ Even though a hearing may be called a "due process" hearing by a statute or regulation, it does not necessarily mean that failure to follow the procedures set for that hearing (or even failing to have a hearing) will violate the fourteenth amendment.[5] The procedural rights conferred by the Constitution are sui generis and are completely independent of any rights created by federal statute. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 534, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494 (1985) (although "entitlements" may be conferred by local law, "due process" is defined by the Constitution). A "right" to a particular hearing process conferred by the IDEA is not founded in the Constitution and therefore cannot be enforced or remedied through a claim based upon an entirely distinct constitutional right. A defendant can violate the Constitution only by violating a right created by the Constitution itself. *See generally* 2 Ronald D. Rotunda, et al., CONSTITUTIONAL LAW § 17.5 at 237 (1985).

To the extent that Counts VII through XII state a "constitutional" claim dependent upon a violation of the IDEA, these claims must be dismissed.

*Category Three: Direct Violations of United States Constitution*

Given the foregoing, there is but a single jurisdictional avenue available to Plaintiffs.

---

**5.** There should be no mystery that § 1983 provides a cause of action for two distinct types of deprivations. First, that section provides a cause of action against State actors if they deprive a person of a right created by a federal statute. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Second, § 1983 provides a cause of action against State actors if they deprive a person of a right created by the United States Constitution.

To state an actionable § 1983 claim, Plaintiffs must allege that Defendants violated a constitutionally protected liberty interest—that is, an interest arising solely under the Constitution. *Austin v. Brown Local School Dist.*, 746 F.2d 1161, 1164 (6th Cir.1984). The Supreme Court has stated that "maintenance of an independent due process challenge to state procures would not be inconsistent with the [IDEA's] comprehensive scheme." *Smith v. Robinson*, 468 U.S. at 1014 n. 17, 104 S.Ct. at 3469 n. 17. A § 1983 claim based upon the Due Process Clause of the Fourteenth Amendment is distinct from any right or interest created by the IDEA. Therefore, the Plaintiffs must allege and prove all of the elements required for a "standard" violation of that amendment. Plaintiffs claim that Defendants' conduct deprived Plaintiffs of the their "right of privacy," their "due process rights" and their "First Amendment rights." These claims are addressed serially below.

### Right of Privacy

Whether Defendants' conduct deprived Plaintiffs of their right to privacy has been discussed thoroughly in section VII above. Counts VII and IX state § 1983 claims alleging a violation of this constitutional right. For the reasons stated in section VII, these claims must be dismissed for failure to state a claim upon which relief can be granted.

### Fourteenth Amendment Due Process

■ Counts VIII, XI, XIII and XIV each claim (with varying degrees of obscurity) that Defendants' alleged conduct deprived Plaintiffs of their due process rights. Before due process can become an applicable concept, a life, liberty, or property interest must be identified. *See generally* 1 Sheldon H. Nahmod, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, § 3.08 at 167 (1991). To be deprived of a due process right, one must be deprived of a liberty or property interest without the proper degree of legal process due for that deprivation. The issue here is whether Defendants' alleged conduct could possibly support a claim that Defendants deprived Plaintiffs of this constitutional right.

Plaintiffs claim that Defendants convened a LCC without observing proper statutory procedures, submitted confidential information to the LCC improperly and initiated a Rule S–5 hearing in retaliation for Plaintiffs' request for a Rule S–1 hearing. None of these allegations can support a claim that Plaintiffs were "deprived" of a liberty or property interest; at the most, these allegations assert that Defendants *attempted* to deprive Plaintiffs of certain interests. The fourteenth amendment is not a general "policing" provision through which federal courts assure that State agencies follow their own procedures and act with honorable intentions. A plaintiff is not "deprived" of a liberty or property interest when a State agency merely initiates a residential placement proceeding, even with the worst intentions. Even assuming that guardians have a constitutionally-protected interest in retaining control over their wards, a guardian is not "deprived" of that right unless the ward is actually removed without sufficient process.

Counts VIII, XI, XIII and XIV must be dismissed to the extent they claim violations of the Plaintiffs' due process rights; their allegations fail to state a claim upon which relief can be granted.

### First Amendment

■ Asserting yet another legal basis for a claim based upon the same factual allegations, Plaintiffs argue that Defendants' conduct regarding the LCC and Rule S–5 proceedings deprived Plaintiffs of their first amendment rights. It is plain that convening a LCC "in reckless disregard of plaintiff's rights to due process" does not state a violation of the first amendment. Similarly, submitting records to the LCC "in reckless disregard of plaintiff's rights to due process" also does not state a violation of the first amendment. Plaintiffs allege further that Defendants convened the LCC and submitting the records for the purpose of retaliating against Plaintiffs for the "exercise of their rights to due process under federal and state law."

Does the first amendment prohibit state officials from convening "retaliatory" LCC

proceedings in response to a student's request for a Rule S–1 hearing? [6] A request for a Rule S–1 hearing is a private act performed pursuant to State law and is not an exercise of "free speech"; Plaintiffs fail to state a colorable claim on that clause of the first amendment.

Plaintiffs' allegation may be based on the petition clause of the first amendment, which provides that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend I. Plaintiffs may be asserting the theory that requesting a Rule S–1 hearing is an exercise of Plaintiffs' first amendment right to petition the government for redress. If the LCC proceeding were intended to deter Plaintiffs' from exercising that right, then the argument concludes that such conduct would be an impermissible burden on Plaintiffs' first amendment rights.

■ A properly-pleaded count may state a § 1983 claim for damages if a person acting under color of State law deprives another of his first amendment right to petition the government. The fourteenth amendment incorporates the first amendment's right to petition clause and thereby requires the States to abide by that constitutional standard. *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (fourteenth amendment incorporates right to petition); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (§ 1983 provides cause of action against State actors for violations of fourteenth amendment). The petition clause must be read together with the free speech clause; the right to petition overlaps and is an assurance of a particular freedom of expression. *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). The right to petition is subject to the same constitutional analysis as the right to free speech. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

■ Thus, as with the distinction between statutorily-required procedures and constitutionally-required due process, there is a distinction between a statutorily-provided petition process and a constitutionally-required petition process. Merely deterring a person from petitioning a State entity for a hearing does not necessarily raise a constitutional issue. A plaintiff must prove that there are free speech concerns in addition to the act of petitioning the State for redress. *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696, 701 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). The petition must present a matter of public concern and not merely a private dispute between the parties. *Id.* at 701 n. 17. A request for a hearing on a matter of private concern is not protected by the petition clause or any other first amendment right. *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Griffin v. Thomas,* 929 F.2d 1210, 1215 (7th Cir.1991); *Gray v. Lacke,* 885 F.2d 399, 410 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *Belk v. Town of Minocqua,* 858 F.2d 1258 (7th Cir.1988); *Phares v. Gustafsson,* 856 F.2d 1003 (7th Cir.1988); *Day,* 768 F.2d at 703; *Vukadinovich v. Bartels,* 853 F.2d 1387, 1390 (7th Cir.1988).[7]

■ A court must examine whether a petition touched upon a matter of public

---

**6.** Note that this allegation is categorically different from a situation where a public employee is fired or discriminated against in retaliation for exercising his or her right to free speech or worship. *See e.g., Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Johnston v. Koppes,* 850 F.2d 594 (9th Cir.1988). In those cases, a person's termination is directly linked to a fundamental exercise of free speech; there is no question that the speech is protected

and that the employer's conduct would deter the exercise of that protected speech.

**7.** This is distinguishable from a person's associational rights, which do not require that the person's associational activity relate to a matter of public concern. *Shneider v. Indiana River Comm. Coll. Found.,* 875 F.2d 1537 (11th Cir. 1989). However, associations for commercial gain are not entitled to first amendment protection. *Rothner v. City of Chicago,* 725 F.Supp. 945 (N.D.Ill.1989), *aff'd,* 929 F.2d 297 (7th Cir. 1991).

concern by looking at content, form and context of the petition. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983); *Gray,* 885 F.2d at 410; *Hesse v. Board of Educ.,* 848 F.2d 748, 751 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989). There are no firm standards by which the law can judge all first amendment deprivation cases; rather, the general principles cited above must be applied to the facts of each case. *Gray,* 885 F.2d at 410; *Knapp v. Whitaker,* 757 F.2d 827, 840 (7th Cir.), *cert. denied,* 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985).

Plaintiffs allege that Defendants' conduct deprived them by attempting to deter Plaintiffs from filing for a Rule S–1 hearing. Plaintiffs' request for a hearing was an attempt to resolve a problem between Plaintiffs and Defendants only. This is similar to the "petition" alleged in *Gray,* where the plaintiff/employee complained to her supervisor in an attempt to stop sexual harassment against the plaintiff. The Seventh Circuit held that the communication related solely to the resolution of a personal problem. 885 F.2d at 411. Similarly, in *Griffin,* the plaintiff's complaint about her teaching assignments state an unprotected private concern. 929 F.2d at 1215. In this matter, although Plaintiffs sought to redress a wrong against Jason Norris, their petition was solely of private concern— Plaintiffs were not petitioning to change a law, but merely to have it applied in their particular case.

In sum, Plaintiffs have failed to state a colorable claim arising under the first amendment. Thus, Counts X, XIII and XIV must be dismissed to the extent they claim violations of the first amendment.

## CONCLUSION

Each of Plaintiffs' claims is either legally or factually insufficient to provide relief. Although some of Plaintiffs' allegations may have stated colorable claims, relief for those claims was foreclosed by jurisdictional grounds or trumped by affirmative defenses. An Order accompanying this Entry will dismiss Counts VI through XIV and direct the Clerk to enter Judgment in favor of the Defendants on Counts I through V.