Alice L. GRIFFIN, Plaintiff–Appellant,

v.

Eddie THOMAS, Jr. and Board of
Education, City of Chicago,
Defendants–Appellees.

No. 89–3542.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1990.

Decided April 12, 1991.

Michael Radzilowsky, Deborah Dobish, Radzilowsky & Dobish, Chicago, Ill., for plaintiff-appellant.

Iris E. Sholder, Office of the State's Atty. of Cook County, Karen Gatsis Anderson, Board of Educ. of the City of Chicago, Chicago, Ill., for defendants–appellees.

Before BAUER, Chief Judge, CUMMINGS and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff, an assistant principal, sued her principal-supervisor and the Board of Education for violating her right to freedom of association by retaliating against her for filing a union grievance. The district court granted the defendants' motion

for summary judgment because the plaintiff's claim did not involve a matter of public concern. For the following reasons, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Facts*

Alice L. Griffin is an assistant principal at May School and an employee of the Board of Education of the City of Chicago (the Board). Eddie Thomas, Jr. is the principal at May School and Ms. Griffin's immediate supervisor. Employees of the Board are evaluated each school year. For the 1984–85 school year, and for fourteen of the previous sixteen years, Ms. Griffin received a "superior" performance rating, the highest rating available to Board employees.

In March 1986, Ms. Griffin sustained injuries while performing duties in her employment. As a result, she missed more than two months of work and filed a worker's compensation claim. Subsequently, at the completion of the 1985–86 school year, Thomas rated Ms. Griffin's performance as "excellent," instead of "superior." Disappointed with the reduction in her rating, Ms. Griffin filed a grievance through the Chicago Teachers Union (the Union). Ms. Griffin prevailed in the dispute, and Thomas restored Ms. Griffin's "superior" rating in September 1986.

Within twenty-four hours after he restored her rating, Thomas reassigned Ms. Griffin to the position of classroom teaching assistant principal; previously Ms. Griffin had been performing administrative, not classroom duties. Ms. Griffin claims that Thomas, in addition to reassigning her, embarked on a course of harassing retaliatory conduct designed to punish her for having filed the grievance with the Union.

Ms. Griffin brought this suit against Thomas and the Board. She alleged a vio-lation of her first and fourteenth amendment guaranties of freedom of association. After the completion of discovery, the district court granted the defendants' motion for summary judgment and dismissed the case with prejudice. Ms. Griffin filed a timely notice of appeal.

### B. *District Court Opinion*

The district court believed that this case was controlled by the Supreme Court's teaching in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983): unless a public employee's expression "can be characterized as touching on a matter of public concern, it is unnecessary for the courts to scrutinize the reasons for the employer's adverse conduct." *Griffin v. Thomas*, 724 F.Supp. 587, 588 (N.D.Ill. 1989). The district court rejected the Eleventh Circuit's position,[1] proffered by Ms. Griffin, that *Connick* is inapplicable to freedom of association claims. The court instead followed the Sixth Circuit's position[2] and held that any distinction among first amendment rights is "nonsensical." *Id.* at 589. Therefore, Ms. Griffin's freedom of association claim had to address a matter of public concern. *See id.* at 589–90.

The court followed *Connick's* directive to ascertain whether the speech addressed a matter of public concern by " 'the content, form, and context of a given statement, as revealed by the whole record.' " *Id.* at 589 (quoting *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690). Ms. Griffin's grievance did not satisfy this test, the court concluded, because "[c]learly Griffin's primary objective in filing that grievance was to resolve a personal dispute between herself and her superior," a matter of private and not public concern under *Gray v. Lacke*, 885 F.2d 399, 412 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). *See* 724 F.Supp. at 589. Moreover, the court rejected Ms. Griffin's argument that, because Thomas'

---

1. *See Hatcher v. Board of Pub. Educ. & Orphanage,* 809 F.2d 1546, 1558 (11th Cir.1987) (discussed more fully *infra* pp. 1212–1213).

2. *See Boals v. Gray,* 775 F.2d 686, 692 (6th Cir.1985) (discussed more fully *infra* pp. 1213–1214).

actions affected the functioning of the school, she had advanced a matter of public concern. The court reasoned that, in order to ascertain whether a public concern is raised, *Connick* instructs a court to look to the allegedly protected speech or action, not to the character of the response induced by the speech or act. Finally, the court declined to accept Ms. Griffin's argument that she voiced an issue of public concern when she filed a grievance with the Union. The court commented that acceptance of such a view would circumvent *Connick*'s substantive requirements and ignore Seventh Circuit precedent. *See id.*

## II

## ANALYSIS

### A. *Standard of Review*

■ We review *de novo* a district court's grant of summary judgment. *See Doe v. Allied–Signal Inc.,* 925 F.2d 1007, 1008 (7th Cir.1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And, as we undertake our task, we " 'must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " *Lohorn,* 913 F.2d at 331 (quoting *Holland*

*v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989)).

### B. *Freedom of Association*

#### 1. Applicability of the *Connick* analysis

■ After reviewing *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), as well as its antecedents and progeny, the Supreme Court in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), concluded that a public employee's expression is protected under the first amendment when it relates to a matter of public concern.[3]

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Indeed, unless the expression can be characterized as touching upon a matter of public concern, it is unnecessary for federal courts to scrutinize the reasons for the allegedly improper discharge. *See id.* at 146, 103 S.Ct. at 1689. This threshold issue is to be decided by the court as a matter of law. *See Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 679 (7th Cir.1990); *Hesse v. Board of Educ.,* 848 F.2d 748, 751 (7th Cir.1988).

■ *Connick* and *Pickering* involved issues of speech; the present case, however, raises associational concerns.[4] As the district court noted, the circuits are split over the issue of whether *Connick*'s public concern requirement applies to freedom of as-

---

3. The first amendment, in relevant part, states: "Congress shall make no law ... abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Our opinion, like the district court's, adheres "to the conventional and convenient (though technically imprecise) practice of referring to the First Amendment's underlying provisions (which of course impose limitations only on the federal government)

rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties)." *Griffin v. Thomas,* 724 F.Supp. 587, 588 n. 2 (N.D.Ill.1989).

4. The right of association derives from the first amendment's rights to free speech and peaceful assembly. *See NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958).

sociation claims. The Eleventh Circuit has held that "*Connick* is inapplicable to freedom of association claims." *Hatcher v. Board of Pub. Educ. & Orphanage*, 809 F.2d 1546, 1558 (11th Cir.1987). The court reasoned that *Connick* was not a retreat from *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), which stated that " 'it is immaterial whether the beliefs sought to be advanced by association pertains to political, economic, religious or cultural matters....' " *Hatcher*, 809 F.2d at 1558 (quoting *NAACP v. Alabama*, 357 U.S. at 460, 78 S.Ct. at 1171).[5] Conversely, in *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir.1985), the Sixth Circuit reviewed the precedent in which *Pickering* and *Connick* were rooted and concluded that, while those two cases involved free speech, they "are based upon freedom of association cases."[6] Thus, the court could "perceive no logical reason for differentiating between speech and association in applying *Connick* to first amendment claims...." *Id.*[7] We believe that Supreme Court precedent and Seventh Circuit case law mandate that we follow this latter approach.

First, we agree with Judge Kennedy's observation in *Boals* that, although *Connick* did not specifically refer to associational rights in drawing the distinction between speech on matters of public concern and matters of private concern, *Connick* acknowledged that the governing precedent, *Pickering*, was rooted in cases dealing with speech and associational rights. *See id.*[8]

We also agree with our colleagues in the Sixth Circuit that the *Connick* Court "did not hold that speech by a public employee on a matter not of public interest was 'totally beyond the protection of the First Amendment[.]' " *Id.* (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690). It merely held that "such speech did not give rise to a cause of action in federal court 'to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.' " *Id.* (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690). Consequently, we see no merit in the Eleventh Circuit's suggestion that *Connick* does not apply to associational rights because those rights encompass broad areas of non-political association. As *Connick* itself emphasizes, speech rights, in parallel fashion, encompass all forms of discourse other than "the narrow and well-defined classes of expression which [carry] so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction." 461 U.S. at 147, 103 S.Ct. at 1690.

We also note that, while dealing with the closely related area of the first amendment's petition clause, the Supreme Court emphatically has eschewed establishing, among first amendment expression rights, a hierarchy of labels. In *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), the Court declined to accept the position that the petition clause provided absolute immunity from damages from libel. The Court refused to read the petition clause in isolation and cautioned against elevating one first amendment freedom over another.

---

5. *Accord Schneider v. Indian River Community College Found., Inc.*, 875 F.2d 1537, 1543 n. 6 (11th Cir.1989).

6. The Fifth Circuit appears to agree with the Sixth Circuit. *See McBee v. Jim Hogg County*, 730 F.2d 1009, 1014 (5th Cir.1984) (en banc) (*Connick* struck "the proper balance between the employee's speech and *associational* rights as citizens and the state's right as an employer to loyal and efficient service") (emphasis supplied).

7. *Accord Monks v. Marlinga*, 923 F.2d 423, 425 (6th Cir.1991).

8. The *Boals* court relied on Justice White's analysis in *Connick*:

> In all of these cases, the precedents in which *Pickering* is rooted, the invalidated statutes and actions sought to suppress the rights of public employees to participate in public affairs. The issue was whether government employees could be prevented or "chilled" by the fear of discharge from joining political parties *or other associations* that certain public officials might find "subversive."

461 U.S. at 144–45, 103 S.Ct. at 1689 (quoted in *Boals*, 775 F.2d at 692) (emphasis supplied by *Boals* court).

To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedom to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition ... than other first amendment expressions.

*Id.* at 485, 105 S.Ct. at 2791 (citations omitted).[9] In *Belk v. Town of Minocqua,* 858 F.2d 1258 (7th Cir.1988), we gave heed to the Supreme Court's teaching in *McDonald* and refused to accept a town employee's submission that the first amendment establishes an absolute right, divorced from any consideration of content, to file a grievance and thus petition the government for redress. We concluded that, "[w]ere we to adopt [the] position that the right to petition is absolute, we would be guilty of implementing precisely the sort of hierarchy of first amendment rights forbidden by *McDonald." Id.* at 1261. We therefore began our analysis by determining whether the grievance "touche[d] upon a matter of public concern." *Id.* at 1262. Similarly, in *Gray v. Lacke,* 885 F.2d 399 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), we held that, "in deciding whether a public employer has wrongfully deprived an employee of his right to petition the government, our inquiry must begin with whether the petition touched upon a matter of public concern...." *Id.* at 412.[10]

Like the first amendment's right to petition, the right to associate "is cut from the same cloth as the other guarantees of that Amendment[.]" *McDonald,* 472 U.S. at 482, 105 S.Ct. at 2789. Therefore, we can perceive no rational reason for discriminating (and thus creating a hierarchy) among the rights of speech, petition, and association in applying *Connick* to first amendment claims.

## 2. Application of the *Connick* analysis to this case

■ Ms. Griffin argues that, even if *Connick* applies, her grievance raised an issue of public concern. The district court properly followed the analysis articulated in *Connick.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147–48, 103 S.Ct. at 1690 (footnote omitted). Ms. Griffin maintains that her grievance related to a matter of public concern because Thomas' alleged retaliatory actions undermined her efforts as a teacher. Ms. Griffin contends that she was denied necessary books and teaching materials, her teaching was interrupted, and other teachers' rights to association were chilled. We cannot accept Ms. Griffin's contention. *Connick* makes plain that the content of the expression is to be examined, not any

9. *Accord Shelton v. Tucker,* 364 U.S. 479, 486, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960) (freedom of association is "a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society"). Justice Brennan has also commented that
[t]he Court previously has emphasized the essential unity of the First Amendment guarantees:
"It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, ... and therefore are united in the First Article's assurance." *Thomas v. Collins,* 323 U.S. 516, 530 [65 S.Ct. 315, 323, 89 L.Ed. 430] (1945).
. . . .

There is no persuasive reason for according greater or lesser protection to expression on matters of public importance depending on whether the expression consists of speaking to neighbors across the backyard fence, publishing an editorial in the local newspaper, or sending a letter to the President of the United States.
*McDonald,* 472 U.S. at 489–90, 105 S.Ct. at 2793–94 (Brennan J., concurring).

10. *Accord Boyle v. Burke,* 925 F.2d 497, 505 (1st Cir.1991) ("absolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content"); *Phares v. Gustafsson,* 856 F.2d 1003, 1009 (7th Cir.1988) ("we analyze an alleged violation of the petition clause in the same manner as any other alleged violation of the right to engage in free speech").

adverse response to that expression. In *Connick*, a public employee circulated a questionnaire after expressing opposition to a reassignment and transfer policy. The questionnaire was the basis for subsequent alleged retaliatory action against the employee. The Supreme Court reviewed the content of each question contained in the questionnaire to determine whether the questionnaire touched upon a matter of public concern. The Court found that all but one of the fourteen questions posed by the questionnaire did not "fall under the rubric of matters of 'public concern[,]'" but were instead mere extensions of the employee's dissatisfaction over the transfers. 461 U.S. at 148, 103 S.Ct. at 1690.

After reviewing the "content, form, and context" of Ms. Griffin's grievance, we are convinced that the district court correctly concluded that Ms. Griffin addressed a matter of purely private concern—her performance rating. Ms. Griffin merely requested that her performance status be reinstated to superior. We already have held in *Knapp v. Whitaker*, 757 F.2d 827, 840 (7th Cir.), *cert. denied*, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985), that a schoolteacher's complaints about his classroom assignments and the content of his evaluation are not protected speech because "such speech is a matter of personal concern, not a matter of public concern." [11] Therefore, because Ms. Griffin's grievance pertained to a matter of purely private concern, the district court properly granted the defendants' motion for summary judgment.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

11. *Accord Day v. South Park Indep. School Dist.*, 768 F.2d 696, 701 (5th Cir.1985) ("As a matter of law ... [plaintiff's] complaint about her individual teaching evaluation and the principal's explanation of it is not protected speech under the first amendment.") (footnote omitted), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir.1989) (union grievance about employee's rate of pay, working conditions, and sexual harassment matters of private concern), *cert. denied*, — U.S. —, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).