**Albert FLENNER and William Glover, Plaintiffs,**

v.

**Michael SHEAHAN, Defendant.**

No. 95 C 405.

United States District Court, N.D. Illinois, Eastern Division.

March 25, 1996.

Matthew Marzano Litvak, Chicago, IL, for plaintiffs.

Gina Elizabeth Brock, State's Attorney's Office, Chicago, IL, for defendant Michael F. Sheahan.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant Michael Sheahan's ("Sheahan") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion is granted.

## I. *Background*

Plaintiffs Albert Flenner ("Flenner") and William Glover ("Glover") (collectively "Plaintiffs") were dismissed from their positions as correctional officers with the Cook County Department of Corrections after a hearing before the Merit Board. They claim that, by initiating dismissal proceedings, Sheahan violated 42 U.S.C. § 1983, depriving them of their First and Fourteenth Amendment rights to freely associate with the Republican Party of Cook County. Plaintiffs allege that, prior to applying for their positions, they actively supported the candidacy of James O'Grady ("O'Grady"), a Republican, for the position of Cook County Sheriff. O'Grady was the Cook County Sheriff at the time Plaintiffs applied. Plaintiffs state that their respective precinct captains sponsored them for their correctional officer positions. Flenner was hired as a correctional officer on August 10, 1989; Glover was hired as a correctional officer on January 2, 1990. The Complaint also includes the assertion that, as correctional officers, Plaintiffs did not hold policy-making positions.

Both Plaintiffs stated on their applications that they had a high school diploma or its equivalent. In the Complaint, Glover admits that he lied on the application in that he had not received a high school diploma, nor had he received a GED, at that time. Flenner, however, alleges that he graduated from Washburn Trade School in 1954, despite a Merit Board finding to the contrary. Both admit that misrepresentations on applications to the Merit Board are grounds for dismissal. Plaintiffs cite 55 ILCS 5/3–7012, which outlines procedures for dismissing both correctional officers and deputy sheriffs; that statute states, in part, "Except as ... otherwise provided ..., no deputy sheriff ... or county corrections officer ... shall be removed ... except for cause."

Sheahan, a Democrat, was elected Sheriff of Cook County in the 1990 general election. After taking office, he initiated dismissal proceedings against Plaintiffs by filing complaints against them with the Merit Board, alleging that they falsified the education portions of their applications. After hearings before the Merit Board, Flenner was dis-missed on February 22, 1993, and Glover was dismissed on February 23, 1993.

Plaintiffs allege that Sheahan singled them out because of their political affiliations. Sheahan did not file complaints against other correctional officers who were hired during Sheahan's, rather than O'Grady's, administration, even though the other officers also falsified the education portions of their applications. The instant Complaint alleges that Sheahan violated Plaintiff's First and Fourteenth Amendment rights to associate with other members of the Republican Party of Cook County. Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983. Sheahan argues that, even if all of Plaintiffs' allegations are true, he is entitled to a judgment on the pleadings under the doctrine of qualified immunity.

## II. *Discussion*

The court will render judgment on the pleadings only if it appears beyond a doubt that a plaintiff can prove no set of facts to support its claim for relief. *Church v. General Motors Corp.*, 74 F.3d 795 (7th Cir. 1996) (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989)). In the instant case, when faced with the doctrine of qualified immunity, Plaintiffs cannot prove a set of facts supporting their claim.

By invoking the defense of qualified immunity, government officials may avoid § 1983 liability for the performance of discretionary functions where their conduct has not violated a "clearly established" constitutional right "of which a reasonable person would have known." *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Accordingly, qualified immunity analysis requires courts to determine (1) whether a plaintiff has alleged a violation of a constitutional right, and (2) whether that plaintiff has shown that applicable constitutional standards were clearly established at the time of the alleged misconduct. *Gregorich*, 54 F.3d at 413.

"Qualified immunity is a defense 'contingent on the state of the law.'" *Smith*

v. *Fruin*, 28 F.3d 646, 650 (7th Cir.1994) (quoting *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir.1991)). Government officials are not required to "predict the law's evolution"; "if it [was] not clearly established that [the official's] conduct violated the law at the time the [official] acted, then [the official is] entitled to qualified immunity." *Smith*, 28 F.3d at 650 (citations and internal quotation marks omitted).

█ For purposes of this motion, Sheahan does not contest that he violated Plaintiffs' constitutional rights by filing complaints against them because of their political affiliations. He does contest, however, that Plaintiffs could show that applicable constitutional standards were clearly established at the time of his misconduct, in 1993. Sheahan argues that qualified immunity shields him from § 1983 liability because, in 1993, (1) the law permitted patronage dismissals of correctional officers, or (2) the law was unclear on the issue of whether patronage dismissal violated constitutional rights.

The Complaint states that Plaintiffs were notified that Sheahan had issued the complaints against them on January 21, 1993. Shortly before that date, the Seventh Circuit Court of Appeals decided *Dimmig v. Wahl*, 983 F.2d 86 (7th Cir.1993). The *Dimmig* court, relying on *Upton v. Thompson*, 930 F.2d 1209 (7th Cir.1991), determined that patronage dismissal of deputy sheriffs was appropriate. *Id.* at 87. As seen in 55 ILCS 5/3–7012, Illinois law dictates that deputy sheriffs and correctional officers are entitled to similar rights upon dismissal. Therefore, Sheahan argues, reading *Dimmig* and 55 ILCS 5/3–7012 together, Sheahan's action to dismiss Plaintiffs (correctional officers) for political reasons was reasonable under the law in 1993.

On the contrary, Plaintiffs argue that such patronage dismissals were clearly impermissible in 1993. Plaintiffs state that Sheahan was required, under 1993 law, to demonstrate that party affiliation was an appropriate requirement for the performance of Plaintiffs' job duties before dismissal. Plaintiffs state that *Dimmig* does not stand for the proposition that all deputy sheriffs were subject to patronage dismissal; rather *Dimmig* only holds that those particular deputy sheriffs, who worked in a small department, were policy-makers subject to patronage dismissal.

As an example, Plaintiffs refer to *Meeks v. Grimes*, 779 F.2d 417, 420–21 (7th Cir.1985), which held that court bailiffs, as opposed to the deputy sheriffs in *Dimmig*, were not subject to patronage dismissal because they could not play a policy-making role. Plaintiffs assert that they are more like *Meeks* bailiffs than *Dimmig* deputy sheriffs.

Plaintiffs also cite *Kolman v. Sheahan*, 31 F.3d 429 (7th Cir.1994), although it postdates the events at issue, for the proposition that patronage dismissal law was clearly established in Plaintiffs' favor in 1993. On the contrary, the language of *Kolman* demonstrates that patronage dismissal law was not clearly established in 1993. *Kolman* did ultimately hold that deputy sheriffs were not subject to patronage dismissals absent evidence that they were policy-makers. *Id.* at 434. In reaching this holding, though, the *Kolman* court noted, "Courts have long struggled with the constitutional implications of political patronage." *Id.* at 431. Further, the *Kolman* court spoke of the "precarious" balancing involved in analyzing whether patronage dismissal is appropriate in particular cases. *Id.* Moreover, the *Kolman* court recognized, "There has been much satellite litigation around the issue of patronage.... '[T]he standard articulated by the [United States Supreme] Court is framed in vague and sweeping language certain to create vast uncertainty.'" *Id.* at 433 (quoting *Branti v. Finkel*, 445 U.S. 507, 524, 100 S.Ct. 1287, 1297, 63 L.Ed.2d 574 (1980) (Powell, J., Dissenting)); *see also, Elrod v. Burns*, 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (Brennan, J., Concurring) (stating that public employees' First Amendment rights may be restrained for "appropriate" reasons). When *Kolman* was decided in 1994, patronage law was a "'shambles' of 'inconsistent and unpredictable results.'" *Id.* at 434 (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 111–12, 110 S.Ct. 2729, 2757, 111 L.Ed.2d 52 (1990) (Scalia, J., dissenting)). Accordingly, the court finds that patronage dismissal law was not clearly established in 1993.

Thus, if, in 1993, absent cases dealing with closely analogous situations, Plaintiffs possessed no clearly established right to freedom from patronage dismissal in 1993. *See id.* at 434. The court recognizes that "closely analogous" in this context does not mean that prior cases need to have involved the exact same fact pattern of unlawful action as the instant case. *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Plaintiffs assert that the *Meeks* bailiffs, rather than the *Dimmig* deputies, were closely analogous to Plaintiffs.[1] Therefore, they argue that they were not subject to patronage dismissal.

However, even absent *Dimmig* and *Upton,* the court is unwilling to hold that, simply because case law was clearly established as to bailiffs, it was clearly established as to correctional officers. Even if Plaintiffs held correctional officer positions with duties similar to those of the *Meeks* bailiffs, given the unruly state of patronage law in 1993, the court cannot determine that a reasonable person would have made the leap to find that Plaintiffs as correctional officers, like the *Meeks* bailiffs, were not subject to patronage dismissal.

Thus, case law was unclear with respect to correctional officers. Accordingly, Sheahan is entitled to qualified immunity because Plaintiffs have failed to demonstrate that they possessed a clearly established right to avoid patronage dismissal. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).

### III. *Conclusion*

Because Sheahan is entitled to qualified immunity for the conduct complained of, the Complaint is dismissed.

IT IS SO ORDERED.

---

1. However, Plaintiffs do not dispute, indeed they state in their Complaint, that dismissal procedures for deputies and correctional officers are identical.