RONALD LEE GILMAN, Circuit Judge,
concurring.
The lead opinion holds that Van Compernolle did not engage in protected speech and, in the alternative, that any such allegedly protected speech did not motivate the City’s decision to terminate him. Because the first determination is unnecessary in light of the second, and because I believe that Van Compernolle presents a convincing argument that he was engaged in protected activity, I concur only in that portion of the lead opinion concerning the City’s valid reason for terminating him.
I read the lead opinion as reaching two conclusions regarding whether Van Compernolle has asserted valid First Amendment grounds in support of his retaliation claim. First, the lead opinion holds that Van Compernolle “does not argue that he was retaliated against solely because he was a union member, but because his activity and speech were union-related.” Maj. Op. at 252. Second, the lead opinion concludes that the particular union-related speech and activities Van Compernolle cites as evidence of his union participation were not protected because they did not address matters of public concern. Maj. Op. at 251. I take issue with both of these conclusions.
The lead opinion properly acknowledges that the Boats court had “no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid First Amendment claim under Conniek and Pickering.” Lead Op. at 251. In keeping with this holding, Van Compernolle explicitly “does not allege that one particular statement, press release, or document constituted the [protected] speech or association at issue ..., but rather tha[t] the Appellee’s anti-union animus ... motivated Appellant’s termination as head of the union.” Van Compernolle could hardly make clearer his argument that he, as union president, was fired for precisely the ground that the Boats court had “no doubt” warranted protection under Conniek — “his membership in and support of a union.” Boals v. Gray, 775 F.2d 686, 693 (6th Cir.1985).
Had Van Compernolle’s simply asserted that he was president of the policeman’s union, that the City was aware of his status as union president, and that it fired him as a result its anti-union animus — and had he left it at that — he would presumably have stated a valid First Amendment claim even under the lead opinion’s analysis. Instead, because Van Compernolle supports his position that he was fired due to his status as union president by including some examples of legitimate union-related activities in which he engaged, such as negotiating with management and raising employee grievances, the lead opinion concludes that his claim fails. This holding would seem to imply that an employee cannot be fired due to his status as a union member or as its president, except where he also alleges that he actually engaged in union-related activity. On the other hand, where an employee claims that he was fired due to his union-member *256 status but does not assert that he engaged in union-related activities, a court would likely find such a claim unsupported and deny it on that ground. This leads to a Catch-22 situation that risks reading the operative language in Boals, which protects an employee’s union-member status, out of the opinion entirely.
I also disagree with the lead opinion’s conclusion that the particular examples Van Compernolle cites of union-related activities in which he engaged were not matters of public concern. The activities that Van Compernolle undertook as union president — promoting collective union action, representing other union employees in their grievances against management, negotiating on behalf of the union for better pay and benefits, etc. — all unsurprisingly worked to the benefit of union members and did not generally address topics of concern to the public at large. The lead opinion consequently concludes that such speech and associative activity are not protected. Lead Op. at 251. To be sure, had Van Compernolle simply claimed that he raised his own personal grievances to management through the union, his activities would not touch on matters of public concern solely because they happened to be union-related. See, e.g., Gragg v. Somerset Technical Coll., 373 F.3d 763, 767 (6th Cir.2004) (finding that an employee’s request for overtime pay was not a matter of public concern, but was a grievance of a personal nature where her purpose was to ensure that she received compensation for the additional work).
Other circuits, however, have reasoned that some of the specific types of speech that Van Compernolle engaged in as union president on behalf of his constituency do touch on matters of public concern, even if they advanced only union-specific causes. See Cook v. Gwinnett County Sch. Dist., 414 F.3d 1313, 1319 (11th Cir.2005) (holding that a union president’s recruiting of fellow bus drivers to join the union touched on a matter of public concern because she did so “to improve a variety of conditions, not only for herself individually, but rather for the collective welfare of her fellow drivers”); Clue v. Johnson, 179 F.3d 57, 61 (2d Cir.1999) (holding that “activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern under Connick”); Gregorich v. Lund, 54 F.3d 410, 416 (7th Cir.1995) (holding that a research attorney’s “attempt to obtain representation for all research attorneys in the Fourth District went beyond his self-interest” and made his activity a matter of public concern).
These cases do not stand for the proposition that all union-related speech necessarily touches on a matter of public concern. Instead, they suggest that a union representative’s advocacy on behalf of other union members does touch on matters of public concern, even if the particular subject matter of the advocacy ordinarily would not.
As I mentioned above, however, I believe that a determination of whether Van Compernolle has set forth valid First Amendment grounds in support of his retaliation claim is ultimately unnecessary to the resolution of this case. Consequently, I decline to join that portion of the lead opinion.